IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MICROSTRATEGY SERVICES          )
CORPORATION,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )    Civil Case No. 1:21-cv-1021 (RDA/IDD)
                                )
STATE STREET BANK AND           )
TRUST COMPANY,                  )
                                )
                                )
          Defendant.            )

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant State Street Bank and Trust Company's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion").  Dkt. 3.  Considering the Motion together with Defendant's Memorandum in Support (Dkt. 6); Plaintiff Microstrategy Services Corporation's Opposition to the Motion (Dkt. 8); and Defendant's Reply in further support of the Motion (Dkt. 9), it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 3) is GRANTED and this case is DISMISSED WITHOUT PREJUDICE.

## I.      BACKGROUND

Plaintiff Microstrategy Services Corporation, a Tysons, Virginia-based software company, filed this matter on July 26, 2021 in Fairfax County Circuit Court, generally alleging that Defendant State Street Bank and Trust Company, a Massachusetts-based company, breached a Software Licensing Agreement (the "Contract") executed on September 27, 2012.  *See generally* Dkt. 1.  In the Complaint, which was removed to this Court on September 7, 2021, Plaintiff alleges that Defendant breached the Contract by allowing non-licensed, third-party users to access the

software's messages and reports.  Dkt. 1-2 at 6.  Plaintiff's sole count in the Complaint alleges breach of contract.  *Id*. at 12.

The parties' relationship began in 2010, when one of Defendant's Vancouver-based employees, Noel Lavieille, downloaded a free-use version of Plaintiff's software.  Dkt. 6 at 7. Plaintiff, through one of its own Vancouver-based sales employees, then contacted Defendant to inquire about upgrading the free use software to a paid-for version.  *Id*.  Over the next few months, the parties negotiated Defendant's purchase of a software license via phone and e-mail between representatives in New York and Vancouver.  *Id*. at 8-9.  Plaintiff, for its part, contends that some of its Virginia-based employees were involved in the negotiations.  Dkt. 8 at 5.  Eventually, the Contract was executed on September 27, 2012, with Defendant's signatory signing in New York and Plaintiff's signatory signing in Virginia.  Dkt. Nos. 6 at 8; 8 at 5.  The Contract is governed by New York law and generally contains the terms and obligations under which Defendant may use Plaintiff's software.  Dkt. 6 at 8.

In the years following the parties' execution of the Contract, the parties negotiated and agreed to additional purchase agreements for additional software licenses, customer service, and technical support.  Dkt. 8 at 5.  These additional agreements were drafted and executed by Plaintiff's representatives in Virginia, and although none of these additional agreements appear to be at issue in this case, Plaintiff contends that Defendant and Plaintiff's representatives in Virginia conducted dozens of phone calls and e-mails regarding the services provided under the additional agreements.  *Id*.

On September 14, 2021, Defendant filed the Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  Dkt. 3.  Defendant's primary argument is that Plaintiff cannot meet its burden of showing that Virginia's long-arm statute

confers personal jurisdiction over Defendant because the Contract it allegedly breached was not negotiated, executed, or performed in Virginia.  Plaintiff responds that some of the personnel involved in negotiating the Contract were located in Virginia and that its Virginia employees performed much of the customer service and technical support under the additional agreements executed over the course of the parties' nearly decade-long relationship.[1]  For the following reasons, the Court concludes that Defendant's Motion to Dismiss (Dkt. 3) should be granted.

## II.    STANDARD OF REVIEW

When a defendant challenges a court's personal jurisdiction on a Rule 12(b)(2) motion, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  In resolving the jurisdictional question, the court "must construe all relevant . . . allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  *Id*.  The Court may consider motion papers, supporting legal memoranda, the allegations in the complaint, as well as affidavits and any other relevant material submitted by the parties to determine the jurisdictional facts.  *Vape Guys, Inc. v. Vape Guys Distribution, Inc.*, 3:19cv298, 2020 WL 1016443, at *6 (E.D. Va. Mar. 2, 2020) (citations omitted).

To defeat the Motion, Plaintiff must demonstrate that Virginia's long-arm statute confers jurisdiction over Defendant and that the exercise of jurisdiction will comport with constitutional due process.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) ("A

---

[1] In the opposition to the Motion, Plaintiff also proposes that the Court grant leave to conduct jurisdictional discovery.  Dkt. 8 at 18.  However, Plaintiff filed a separate motion for jurisdictional discovery (Dkt. 10), and the Court denied that motion on October 22, 2021.  Dkt. 16.

federal district court may only exercise personal jurisdiction . . . if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment").

Virginia's long-arm statute states, in relevant part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in [Virginia]."  Va. Code Ann. § 8.01-328.1(A)(1).  It is well-established that Virginia's long-arm statute has been extended to the constitutional limits established by *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).  *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 180 S.E.2d 664, 667 (Va. 1971) ("It is manifest that the purpose of Virginia's long[-]arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the Due Process Clause.").  Thus, courts have recognized that the "statutory" inquiry and the "constitutional" inquiry merge into one, such that a court must ultimately look to "whether the defendant has sufficient 'minimum contacts' with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *ePlus Tech, Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002).  "Minimum contacts" are present if a defendant "purposefully directed his activities at the residents of the forum" and the plaintiff's cause of action "arise[s] out of" those activities.  *Burger King Corp. Rudzewicz*, 471 U.S. 462, 472 (1985).

In determining whether Virginia's long-arm statute confers personal jurisdiction of a defendant, a court must examine "both the quantity and quality of [Defendant's] contacts."  *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 761 F. Supp. 423, 426 (E.D. Va. 1991).  More specifically, where a defendant is alleged to have breached a contract, the court must conduct a detailed inquiry into "(1) where any contracting occurred, and where the negotiations

4

took place, (2) who initiated the contact, (3) the extent of the communications, both telephonic and written, between the parties, and (4) where the obligations of the parties under the contract were to be performed." *Delta-T Corp. v. Pac. Ethanol, Inc.*, No. 3:08CV524, 2009 WL 77869, at *3 (E.D. Va. Jan. 7, 2009).  Overall, the "[c]orrect application of the long[-]arm statute requires a factual analysis of the defendant's business activity in the forum." *Id.* at *4.

### III.     ANALYSIS

At the core of the Motion, the parties dispute whether Defendant has reached into Virginia to solicit Plaintiff's business such that the long-arm statute confers jurisdiction over Defendant for Plaintiff's breach of contract claim.[2]  For the following reasons, the Court concludes that Virginia's long-arm statute does not confer jurisdiction over Defendant for this lawsuit.

The Court's analysis begins with the first of its four-part inquiry: where any contracting occurred and where the negotiations took place.  *Id.* at *3.  It is clear from the record that the Contract was both negotiated and executed by Defendant while outside of Virginia.  Although Plaintiff contends that some of its Virginia-based employees were involved in the negotiation of the Contract, it has not produced any evidence supporting that contention, instead only vaguely indicating that some employees involved in the negotiations worked in its Tysons, Virginia office. The record before the Court instead shows that, primarily, Plaintiff's Vancouver-based sales team negotiated the Contract and that Defendant never knowingly, much less purposefully, reached into Virginia during negotiations.  Dkt. 6 at 8.

---

[2] The parties do not dispute that there is no general subject matter jurisdiction over Defendant because it has no continuous or systematic contacts with the state of Virginia.  *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020).

Second, the Court finds that Plaintiff initiated contact with Defendant.  While the parties agree that Defendant downloaded a version of Plaintiff's free-use software from a website, the initial contact relating to the solicitation of the Contract itself was from one of Plaintiff's sales employees in Vancouver and was directed toward Defendant's employee, Mr. Lavieille, who was also in Vancouver.  To the extent Defendant's act of downloading the free-use software is relevant to which party initiated the contact resulting in the negotiations and Contract, it appears from the record that it was Plaintiff's free-use software that was soliciting Defendant by requesting Defendant's contact information so that Plaintiff's sales team could contact Defendant to sell its paid-for software.

Third, none of the e-mails and telephone calls concerning the parties' negotiation of the Contract came from or were directed to Virginia, which follows naturally from the Court's conclusion that the Contract was not negotiated in Virginia.  Dkt. 6 at 7-8.  Plaintiff's argument that Defendant subsequently reached into Virginia by executing additional purchase orders and requesting technical support is simply not relevant, because none of those post-contractual contacts form any portion of the basis of Plaintiff's claim that Defendant breached the Contract.

Fourth, there is nothing in the record to suggest that any of the Contract's performance took place in Virginia.  Plaintiff maintains that certain parts of the software it sold to Plaintiff under the Contract were developed in Virginia, but as Defendant correctly responds, Defendant had no control or knowledge of where Plaintiff's performance was going to take place.  Certainly, then, the Court cannot conclude that the limited amount of Plaintiff's performance that occurred in Virginia is evidence that Defendant had purposefully availed itself to jurisdiction in Virginia. And under the terms of the Contract itself, it is clear that Defendant has no performance obligations in Virginia.  Plaintiff notes that the Contract contains a provision requiring Defendant to submit

self-audit reports to a fax number in Virginia, but Defendant never conducted a self-audit, and even if it did, the mere fact that Defendant would have been required to send the results via fax to a location in Virginia is insufficient for the Court to conclude that the Contract was being "performed" in Virginia.  By its terms, the Contract predominantly governs Defendant's "use" of Plaintiff's software, and the record is clear that Defendant is a Massachusetts-based company that has no physical presence in Virginia whatsoever.

The Court's conclusion that Virginia's long-arm statute does not confer jurisdiction over Defendant for breach of the Contract is further supported by well-settled precedent establishing that a defendant located outside of Virginia may be subject to Virginia's long-arm statute only when it reaches into the state to transact business and the cause or action arises out of Defendant's "transaction."

In *Gallop Leasing Corp. v. Nationwide Mut. Ins. Co.*, 418 S.E.2d 341, 342-43 (Va. 1991), the Virginia Supreme Court held that a defendant's act of amending an insurance policy, which was the only "transaction" that occurred in Virginia, could not support personal jurisdiction over a defendant where an insurer sought to rescind an insurance policy because the act of amending the policy was not the "transaction" from which the plaintiff's cause of action arose.  Similarly, in *Potomac Auto Mall Holdings, Inc. v. Blue Cover Financial, LLC*, 1:20-cv-865, 2020 WL 6946599, at *7 (E.D. Va. Nov. 24, 2020), this Court held that a an out-of-state defendant was subject to jurisdiction under Virginia's long-arm statute given defendant's "extensive and continuous" communications with a Virginia-based plaintiff to solicit its business.  Critically, however, the defendant in *Potomac Auto* had reached directly into Virginia—regarding a sale of real property located in Virginia—by communicating directly with a plaintiff located in Virginia.  *Id*.  A term sheet was executed but the sale of property fell through, making clear that the plaintiff's subsequent

breach of contract action "arose" directly out of the defendant's contacts with Virginia. *See id*. at *4 (recognizing that the non-resident defendant's contacts with Virginia must "form the basis" of the suit).

Plaintiff's primary argument here, however, is that Defendant's post-contractual contacts with Virginia—including Defendant's solicitation of additional purchase orders, customer service, and technical support—may give rise to personal jurisdiction for breach of the Contract.  But the well-established rule regarding personal jurisdiction over an out-of-state defendant is that a defendant's contacts with Virginia must "form the basis" of plaintiff's cause of action.  *Id*. at *4-5 (citing *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982) and *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990)).  The record here is clear that any of the very minimal and indirect contacts Defendant has had with Virginia do not "form the basis" of Plaintiff's suit, which only alleges a single cause of action for breach of a contract that was not negotiated, performed, or executed in Virginia.  The Court therefore concludes that Virginia's long-arm statute does not confer personal jurisdiction over Defendant for this case and that Defendant's Motion should be granted.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 3) is GRANTED and this case is DISMISSED WITHOUT PREJUDICE.

It is SO ORDERED.

Alexandria, Virginia
November 9, 2021

/s/

Rossie D. Alston, Jr.
United States District Judge

8